## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION



**TERRANCE S. HAYNIE,**

    Plaintiff,

vs.                                            Case No. 1:15CV625-LMB-IDD

**UNITED AIR LINES, INC.;**
**CONTINENTAL AIRLINES, INC**

    Defendant.

    _____/

### COMPLAINT
### (Jury Trial Requested)

    **COMES NOW** the Plaintiff, **TERRANCE S. HAYNIE** (hereinafter also referred to as "Captain Haynie"), by and through undersigned counsel, and herewith files this Complaint and Demand for Jury Trial in the above captioned matter as follows:

**I.   PRELIMINARY STATEMENT**

    1. This is an action for declaratory, permanent injunctive, and monetary relief brought by **Captain Haynie** to redress the deprivation of civil rights, as prohibited by the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, and 42 U.S.C. § 1981 ("Section 1981), which prohibit, *inter alia,* racially discriminatory denial of terms and conditions of employment, including temporary managerial assignments, promotional opportunities, and subjecting employees to hostile work environment, other adverse actions, and constructive discharge from employment, based on race. **Captain Haynie** also seeks redress for harm incurred as a result of Defendants' retaliating against him for making charges and participating in enforcement proceedings under Title VII and Section 1981, and for opposing practices made unlawful by those civil rights

enactments.

Furthermore, the unlawful actions of the Defendants have caused **Captain Haynie** extreme mental anguish, outrage, depression, painful embarrassment among his friends and former fellow employees, stress-induced insomnia, humiliation, disruption of his personal life, and loss of the ordinary pleasures of everyday life. He further states:

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §1331 and 42 U.S.C. §2000e- (f) (3). This action presents federal questions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended, 42 U.S.C. § 1981, and 28 U.S.C. §§ 2201 and 2202 (The Declaratory Judgment Act).

3. Venue is proper in this district pursuant to 42 U.S.C. §2000e5 (f) (3), because Plaintiff's former employment domicile was Dulles, Virginia, and the records relating to companywide promotions are also located in the Eastern District of Virginia, Alexandria Division.

4. Plaintiff has fulfilled all the jurisdictional and administrative prerequisites to initiating this lawsuit under Title VII, by timely filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in which he sought redress for the unlawful race discrimination and retaliation that are the subjects of this cause..

5. Under Title VII, the Corporate Defendants constitute a single Company with more than 15 full time employees, 42 U.S.C. § 2000e (b).

6. Plaintiff has timely commenced this action within ninety (90) days of his receipt of the Notice of Right to Sue Letter issued by the EEOC.

### III. PARTIES

7.  **Captain Haynie** is an African American male who was employed by Defendants from approximately December 1988 to March 2014, at which time he served as a Washington-Dulles based B767 Captain.

8.  At all times pertinent to this action, **Captain Haynie** was a covered employee, and the Defendants, singularly and collectively, were covered employers, for purposes of Title VII.

9.  Defendants **United Air Lines, Inc.,** and **Continental Airline, Inc.** (collectively also referred to as "United") share common management, including the same management personnel. United Continental Holdings, Inc., (together with its consolidated subsidiaries, "UAL") is a holding company and its principal, wholly-owned subsidiaries are United Air Lines, Inc. (together with its consolidated subsidiaries, "United") and **Continental Airlines, Inc.** (together with its consolidated subsidiaries, "Continental"). UAL is a Delaware Corporation, licensed to and doing business within this judicial district.

### IV. FACTUAL ALLEGATIONS

10. **Captain Haynie** commenced his employment with United on or about December 5, 1988 as a Second Flight Engineer. At all times pertinent to this complaint, the served as B767 Captain.

11. **Captain Haynie,** at all times pertinent to this complaint, performed satisfactorily, and remained qualified for the position occupied and for those he sought and aspired in the managerial promotional ranks.

12. **Captain Haynie** had not engaged in any conduct, nor is there any record

3

which would disqualify him from obtaining any of the positions for which he was passed over. Furthermore, at all times pertinent to this Complaint, he fully expressed to his superiors and decision-makers his interest in and desire to be selected for managerial opportunities, and was prepared to accept either temporary or permanent promotional positions.

13. On or about May 29, 2012, **Captain Haynie,** along with 22 other persons, filed a lawsuit against the defendants, or engaging in practices prohibited by title VII and section 1981.

14. On or about July 12, 2012, **Captain Haynie**, after continuing to be subjected to actions he perceived as being racially motivated which were committed by his white co-workers and white supervisors, specifically First Officer Chris Milder, and Chief Pilot James Simmons,. He filed another Charge of Discrimination in order to vindicate his protected rights; equal employment opportunities and freedom from retaliation for exercising those rights.

15. **Captain Haynie** was compelled to file yet another administrative Charge of Discrimination, although he had recently sought judicial relief, because the racially motivated behavior continued.

16. **Captain Haynie** repeatedly notified his managers of ongoing harassment in the workplace, including cockpit graffiti that was racist in nature directed towards him, and has repeatedly requested of his supervisor that United take some action to prevent the continuation of the unlawful behavior, and to correct the racial inequities.

17. Less than two weeks after the litigation commenced, on June 10, 2012, Capt.

Haynie was flying with First Officer Chris Milder words insubordinate, disrespectful, and uncooperative stop the point of failing to follow what is referred to as a "go dark" checklist when departing the aircraft.

18. **Capt. Haynie** was concerned about Miller's performance and egregious conduct, and the impact such conduct would have on the flight mission, so he conferred with supervisor, then Assistant Chief Pilot James Smith ("ACP Smith).

19. For the good of the passengers, the crew and the flight mission, **Capt. Haynie** requested that First Officer Milder be moved from the remainder of the trip. ACP Smith declined and, instead, directed **Capt. Haney** to confront First Officer Milder regarding the behavior and to seek ways to handle the matter through discussion.

20. When Capt. Haynie did as he was directed by ACP Smith, by engaging in a discussion, First Ofc. Millender directly expressed his disdain for Capt. Haynie, because had learned that Capt. Haynie was responsible for disallowing an intoxicated white officer to not accompany him on a flight.

21. While **Capt. Haynie's** protective action by disallowing an inebriated First Officer to work occurred in 2007, he had been frequently subjected to racial harassment for removing the white officer, and it continued up to that day.

22. Before reporting First Officer Milder to his superior for the insubordinate and racially motivated conduct, **Capt. Haynie** attempted to counsel and calm the First Officer, so the mission could be safely accomplished. He also explained that the actions taken years earlier were solely for safety reasons. First Officer Milder's racially tinged behavior continued, leaving **Capt. Haynie** no choice but to order the First Officer off the aircraft and request a replacement.

23. The failure of **United** to investigate the racially motivated acts of retaliation against **Capt. Haynie,** including racial epithets and graffiti, created and developed the atmosphere where First Officer Milder and others were not deterred from engaging in racially harassing conduct, even against superior officers.

24 **Captain Haynie's** request for placement was denied, and as a direct result of his refusal to accept racial harassment by counseling the First Officer Milder and reporting him, ACP Smith and Chief Pilot James Simmons, white male, removed **Captain Haynie** from flight, replaced him with another Captain, and returned First Officer Milder to the aircraft.

25. **Captain Haynie** continued to seek recourse through his supervisors, and, as result of his insistence that the unlawful conduct be corrected, he was placed on a reputation tarnishing " do not fly" status.

26. To exacerbate the pain and humiliation suffered , **United** did not interview **Captain Haynie** until almost a month later, and even then, no explanation was given for either First Officer Milder's behavior or the adverse action against him.

27. **United** also took this occasion to further retaliate against **Captain Haynie** for opposing race discrimination, and taking lawful action against it, by referring him, through Chief Pilot Simmons, to **United's** Regional Manager, Employee Assistance, as he was kept on the "do not fly" list, and further referred to the Defendant's Corporate Medical Department to be evaluated for psychological fitness, by one of **United's** health care professionals, all as a condition for returning to flying status.

28. **United's** employee assistance manager and its Chief Pilot, rather than take corrective action against those who intentionally directed racially foul action against

**Captain Haynie,** instructed him to find ways to adjust to the harassment because **United** could not do very much about it.

29. Being aware of the negative stigma attached to an unwarranted psychological fitness for duty evaluation would have on his reputation and career, **Captain Haynie** requested an explanation of the reason for the directive, and not receiving one, declined to submit to an evaluation by one of **United's** health care professional selectee.

29. When **Captain Haynie** did not follow the directive for a psychological evaluation, by **United's** selectee, again, all due to his opposing racial harassment, **United** began a disciplinary investigation on him and suspended him without pay for 90 days - eventually reduced to 60 days.

30. **United** eventually did permit **Captain Haynie** to have an evaluation by a qualified healthcare professional of his choosing, but this did not occur until almost a year after he suffered the pain and agony of being retaliated against for engaging in an effort to have a work environment free from racial harassment and discrimination.

31. Meanwhile, **United** took no disciplinary action, or even conducted a disciplinary investigation, against First Officer Milder, who engaged in the racially motivated opprobrious conduct.

34. Meanwhile, during this same period of time, subsequent to **Captain Haynie's** initiation of the judicial process and filing another charge of discrimination, the white male subordinate whom **Captain Haynie** prevented from flying while inebriated, Charles Linberg, received a managerial promotional opportunity while **Captain Haynie** was not even afforded an opportunity to apply for it. Mr. Lindberg was hand selected and, consistent with **United's** frequent practice, there were no advertisements for the vacant

position.

35. **Captain Haynie** had regularly expressed to Chief Pilot Simmons and other decision-makers that he was interested in being selected for a managerial appointment, temporary or permanent, but was never afforded such an opportunity.

35. The managerial promotion opportunity afforded to Mr. Lindberg was one that **Captain Haynie** was well-qualified for and, indeed, was more qualified than the white selectee, and would have actively sought being selected had the vacancy been posted. The selecting officials were well aware of his desire for a promotion to the managerial ranks because he was subtly told by one of **United's** selecting officials that applying for a vacancy would be futile.

36. **United's** failure to investigate the allegations of racial harassment and racial discrimination, or to take corrective actions against those who perpetrated those unlawful acts, is an integral part of a pattern and practice of marginalizing African American pilots and subjecting them to race discrimination and retaliation prohibited by Title VII and Section 1981.

39. Although it appeared to **Captain Haynie** that **United** was prepared to take an infinitesimally small step to mitigate the harm it caused him through their unlawful discrimination and harassment by agreeing to his selecting an independent health care professional for the evaluation, as well as providing him with earned emoluments, **Capt. Haynie's** coworkers and supervisors continued to engage in racially offensive conduct by not only sabotaging what appeared to have been an agreement, but also by making it arduous for him to work.

40. The incidences of racial harassment endured by **Captain Haynie** were so severe

and pervasive that they created a hostile work environment based on his race. Not only was the conduct subjectively perceived by **Captain Haynie** as a race-based changes in terms and condition of employment, but any reasonable person would have objectively perceive the same palpably unlawful effect.

41. As stated, **Captain Haynie** took reasonable steps to have **United** address and correct the unlawful actions against him, but it simply refused to do so, and, as shown with perpetrators First Officer Mildner and Lindberg, they were rewarded.

42. The racial harassment that **Captain Haynie** encountered in his workplace became so unbearable that any reasonable person in his position would feel compelled to end the employment relationship. **Captain Haynie** was constructively discharged March 4, 2014.

43. **United's** continual treatment of his equal opportunity rights with flippancy scorn and derision and the demeaning and racially offensive conduct by supervisory personnel continued to the point where **Captain Haynie's** health began to become compromised.

### V. COUNT I (HOSTILE WORK ENVIRONMENT)

44. Plaintiff repeats and re-alleges Paragraphs 1- 44 above, as though fully set forth herein.

45. At all relevant times, Defendants had actual and constructive knowledge of the hostile work environment and acts of harassment described and alleged herein, and condoned, ratified and failed to remedy the hostile environment and such acts of harassment.

46. The harassment was committed with malice, ill motive, and with an intent to

oppress Plaintiff Haynie.

47. As a result of the hostile and offensive work environment perpetrated and maintained by Defendants, and Defendants' failure to protect plaintiff from further harassment, Plaintiff Haynie suffered severe emotional distress, humiliation, indignity and loss of income.

48. As a direct and proximate result of the willful, knowing, and intentional harassment against Plaintiff Haynie, and defendant's failure to act, Plaintiff has suffered mental distress, anguish, and indignation, loss of income, loss of advancement and promotions, loss of career opportunity and loss of tangible job benefits, all in amounts to be proven at trial.

49. **Captain Haynie** requests relief as provided in the Prayer for Relief below.

### COUNT I I (FAILURE TO PROMOTE)

49. Plaintiff repeats and re-alleges Paragraphs 1- 44 above, as though fully set forth herein.

50. Title VII has the same proscription against race discrimination in the context as this action as Section 1981. The Civil Rights Act of 1866, codified as 42 U.S.C. §1981, prohibits race discrimination in the making and enforcing of contracts. "Making and enforcing" contracts includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981(b).

51. The foregoing conduct constitutes illegal intentional discrimination with respect to the making, performance and modification of contracts prohibited by 42 U.S.C. §1981 and Title VII.

52. Defendants have engaged in a pattern and practice of intentional race discrimination against Plaintiff with respect to special assignments, and promotions.

53. As a direct and proximate cause of Defendants' unlawful conduct, **Captain Haynie** has suffered and will continue to suffer both pecuniary and non-pecuniary losses for which the Defendants are liable.

54. Plaintiff requests relief as provided in the Prayer for Relief below.

### COUNT III (CONSTRUCTIVE DISCHARGE)

55. Plaintiff repeats and re-alleges Paragraphs 1- 44 above, as though fully set forth herein.

56. The foregoing conduct constitutes illegal intentional discrimination with respect to the termination of contracts prohibited by 42 U.S.C. §1981 and Title VII, in that Defendants, by their unlawful conduct described above, created and maintained workplace that was so replete with racial harassment that they were aware of and intended that the conditions become so unbearable that **Captain Haynie** and any reasonable person in his position would have felt compelled to end the employment relationship.

57. As a direct and proximate cause of Defendants' unlawful conduct, **Captain Haynie** has suffered and will continue to suffer both pecuniary and non-pecuniary losses for which the Defendants are liable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. General damages in amounts according to proof and in no event in an

amount less than the jurisdictional limit of this court;

2. For special damages in amounts according to proof;

3. For back pay and front pay;

4. For punitive damages sufficient to punish defendant for the conduct; alleged herein, and to deter such conduct in the future;

5. For attorneys' fees as provided by law;

6. A jury trial on issues so triable.

Respectfully submitted this 14th day of May, 2015.

TERRANCE S. HAYNIE

By _____
Counsel

A. Donald McEachin, Esquire (VSB: 27054)
dmceachin@mceachingee.com
Curtis M. Hairston, Jr., Esquire (VSB: 28093)
chairston@mceachingee.com
McEachin & Gee, P.C.
211 East German School Road
Richmond, VA 23224
Telephone: (804) 226-4111
Facsimile: (804) 864-5292

Lorenzo Williams (FBN 249874)
lw@williegary.com
Gary, Williams, Parenti, Watson & Gary, P.L
221 S.E. Osceola Street Stuart, Florida 34994
Telephone:(772) 283-8260
Facsimile:(772) 219- 3365

James Leonard Brown, Esquire (SBN:40702)
The Law Office Of James L. Brown
5900 Wilshire Blvd., Suite 2645
Los Angeles, CA  90036
Telephone: (213) 251-2332
Facsimile:  (213) 607-1456
*Attorneys for Plaintiffs*